United States District Court
for the
Southern District of Florida

| Seminole Tribe of Florida, Plaintiff, | ) | |
|---|---|---|
| v. | ) | |
| Leon Biegalski, as Executive Director of the Department of Revenue of the State of Florida, Defendant. | ) ) ) ) ) ) | Civil Action No. 16-62775-Civ-Scola |

## **Order Granting Motion to Dismiss**

The Seminole Tribe of Florida has filed suit, seeking injunctive relief and a declaratory judgment that Florida's imposition of a utility tax on the Tribe's use of electricity on its reservations or other property is improper. This is the second time the Tribe has sought relief from Florida's utility tax. Accordingly, Defendant Leon Biegalski has filed a motion to dismiss (ECF No. 12), arguing that the Tribe's second suit is foreclosed by claim preclusion. The Tribe, of course, vigorously opposes the application of claim preclusion to this suit. (Pl.'s Resp., ECF No. 18.) After careful analysis, the Court agrees with Biegalski and finds the Tribe's instant case should be dismissed. The Court therefore **grants** Biegalski's motion (**ECF No. 12**).

1. **Standard of Review**

A complaint may be dismissed for the failure to state a claim "when its allegations . . . show that an affirmative defense bars recovery on the claim." *Horne v. Potter*, 392 Fed. App'x. 800, 801 (11th Cir. 2010). An affirmative defense of claim preclusion can therefore properly be raised and decided on a Rule 12(b)(6) motion. *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001), *abrogated on other grounds*. Still, in evaluating a motion to dismiss under Rule 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

While the court's review in considering a 12(b)(6) motion is ordinarily "limited to the four corners of the complaint," *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009), a court may nonetheless consider documents that the complaint incorporates by reference as well as matters that may be judicially noticed. *See Tellabs, Inc. V. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A court may take judicial notice of "facts that are not subject to reasonable dispute because they are capable of accurate and ready

determination by resort to sources whose accuracy cannot reasonably be questioned." *Sherleigh Assocs., LLC v. Windmere-Durable Holdings, Inc.*, 178 F. Supp. 2d 1255, 1268 (S.D. Fla. 2000) (Lenard, J.). Among the matters that may be judicially noticed are court documents from an earlier court action. *See Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1076 n. 9 (11th Cir. 2013).

### 2. Background

The Tribe is a federally recognized Indian tribe with reservations throughout Florida. In a prior case, in 2012, the Tribe sought declaratory and injunctive relief against Marshall Stranburg, the then interim executive director of Florida's Department of Revenue, complaining that Florida's rental and utility taxes were being applied to the Tribe in violation of federal Indian law. *Seminole Tribe of Florida v. Florida*, 49 F. Supp. 3d 1095, 1096–97 (S.D. Fla. 2014) (Scola, J.) ("*Seminole I*"), *aff'd in part, rev'd in part sub nom. Seminole Tribe of Florida v. Stranburg*, 799 F.3d 1324 (11th Cir. 2015). This Court agreed with the Tribe, granting summary judgment in its favor on all of its claims. *Seminole I*, 49 F. Supp. 3d at 1097. Stranburg appealed, however, securing a reversal of the Court's judgment on the utility tax but not the rental tax. The Eleventh Circuit found that the Court "erred in placing the legal incidence of the Utility Tax on the Tribe." *Seminole*, 799 F.3d at 1353, *cert. denied sub nom. Seminole Tribe of Florida v. Biegalski*, 136 S. Ct. 2480 (2016). Instead, the Eleventh Circuit concluded that the legal incidence of the utility tax "falls on the non-Indian utility company" and, further, that its application was not preempted by federal law. *Id.* at 1352.

### 3. Claim preclusion applies to the Tribe's second complaint.

"Given that the matter before us is a federal question previously decided by a federal court, it naturally follows that federal preclusion principles apply in this case." *CSX Transp., Inc. v. Bhd. of Maint. of Way Employees*, 327 F.3d 1309, 1316 (11th Cir. 2003). "Under Eleventh Circuit precedent, a claim will be barred by prior litigation if all four of the following elements are present: (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999). Where all four elements are met, the judgment in the first suit is conclusive not only as to every matter which was offered and considered to sustain or defeat the claim, but as to every other matter which might have been also properly litigated and determined in that action. *See id.* (holding that claim preclusion

"bars the filing of claims which were raised or could have been raised in an earlier proceeding.") The principle motivating the application of claim preclusion—also referred to as res judicata—is that the "full and fair opportunity to litigate protects a party's adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* (quoting *Montana v. United States,* 440 U.S. 147, 153–54 (1979)).

Here, the parties' quarrel centers on the fourth element: whether "the same cause of action is involved in both cases." After careful consideration, the Court finds it is.

### A. Both cases arise out of the same nucleus of operative facts or are based on the same factual predicate.

One way of determining whether the same cause of action is involved in both cases depends on whether the cases arise out of the same nucleus of operative facts. *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990). That is, "if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action," the two cases are considered to be "the same 'claim' or 'cause of action' for purposes of res judicata." *Id.* (quoting *Ruple v. City of Vermillion, S.D.,* 714 F.2d 860, 861 (8th Cir.1983), *cert. denied,* 465 U.S. 1029 (1984)).

On the one hand, the Tribe theorizes that claim preclusion cannot be applied to the two cases here because "there is no nucleus of operative fact" since the relief requested depends on the resolution of purely legal issues. (Pl.'s Resp. at 15.) The Tribe did not supply, nor can the Court itself find, any actual support for this creative, but ultimately unworkable, contention.[1] Under the Tribe's theory, it could continue re-litigating the exact same cause of action, infinitely, so long as there were no disputed issues of material fact and the case involved only questions of law. This runs contrary to the very essence of claim preclusion.

Alternatively, the Tribe contends that *Seminole I* and *Seminole II* have only one fact in common: "that the Tribe uses utilities services on Tribal Land."

---

[1] Further, the Tribe cites to *Citibank,* 904 F.2d at 1501 (11th Cir. 1990) and *I.A. Durbin, Inc. v. Jefferson Nat. Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986) to support its claim that where a suit is for prospective declaratory relief, issue—rather than claim—preclusion principles apply. Neither case stands for the proposition stated. Instead, there appears to be no obstacle to applying claim preclusion where a suit involves only prospective declaratory relief. *See, e.g.*, *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1559 (11th Cir. 1990) (applying claim-preclusion principles to a case where the plaintiffs sought a declaratory judgment that flying the confederate flag atop the Alabama capitol dome violates various federal rights).

(Pl. Resp. at 15.) The Tribe attempts to distinguish between the factual bases of its two cases by focusing on the general, although sparse, facts it actually pleaded in *Seminole I* as compared to the more specific and detailed facts it pleads in this, its second, case. The Tribe's focus is misplaced. Instead, "[t]he now-accepted test in preclusion law for determining whether two suits involve the same claim or cause of action depends on factual *overlap*." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 316 (2011) (emphasis added). That is, courts should evaluate whether "the same evidence support[s] and establish[es] both the present and the former cause of action" in determining if preclusion principles apply. *Id.* (citing 2 H. Black, Law of Judgments § 726, p. 866 (1891)); *see also Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2332 (2016), *as revised* (June 27, 2016) (Alito, J., dissenting) (quoting Restatement of Judgments § 61 for the proposition that "the plaintiff is precluded from subsequently maintaining a second action based upon the same transaction, if the evidence needed to sustain the second action would have sustained the first action."). In *Seminole I*, the Tribe asked the Court for a judgment declaring that Florida's utility tax was improperly applied to utility services provided to the Tribe on tribal land as well as a for a permanent injunction precluding further imposition of the tax.[2] (*Seminole I*, Case No. 12-cv-62140-RNS, Compl. ECF No. 1, 1–2 (Oct. 30, 2012).) In seeking its relief in *Seminole I*, the Tribe alleged, generally, that it "consumes electricity in connection with every activity it conducts on Tribal Land, including providing Essential Government Services, leasing Tribal Land and conducting gaming operations." (*Seminole I*, Compl. at 11.) Here, in *Seminole II*, the Tribe now seeks the same basic relief: it seeks, first, a declaratory judgment that Florida's utility tax, as applied to utilities services, "specifically electricity," used by the Tribe on its tribal land, is prohibited under federal law and, second, an injunction enjoining the imposition of the tax. (Pl.'s Compl., ECF No. 1, 1–2.) However, rather than referencing the Tribe's electricity use generally, as to "every activity it conducts on Tribal Land," like it did in *Seminole I*, the Tribe now narrows its focus; specifying instead fourteen discrete activities in which it uses electricity (set forth in counts one through fourteen): law enforcement; education activities; medical health and fire rescue services; family and youth counseling; water and sanitary management; road construction and maintenance; housing activities; culture preservation; leasing activities; forestry and wildlife management; agricultural and livestock grazing activities; rock mining; Indian gaming; and gaming-related economic activities.

---

[2] The complaint in *Seminole I* also involved claims related to a rental tax as well. As previously noted, the Eleventh Circuit affirmed the Court's determination that Florida improperly assessed the rental tax and that tax is not at issue in this case.

At their core, the essential facts in both cases are the same: the Tribe uses utilities, including electricity, on its Tribal Land; Florida imposes a utilities tax on the utilities services provided to the Tribe. In *Seminole I*, the Tribe complained about the utility taxes generally, explaining that "[t]he Tribe consumes electricity in connection with every activity it conducts on Tribal Land" and that "[t]he Utilities Tax on utility services provided to the Tribe on tribal Land burdens each of these activities." (*Seminole I*, Compl. at ¶ 45.) These "activities," the Tribe elaborated in *Seminole I*, include "providing Essential Governmental Services, leasing Tribal Land and conducting gaming operations." (*Id.*)

In comparison, every single one of the fourteen particular activities listed by the Tribe in its second complaint is encompassed by the broader allegations presented in *Seminole I*. In each of its fourteen counts the Tribe expounds on what the electricity is specifically used for with respect to each activity: for example, regarding its "education activities" claim, the Tribe explains that it "uses electricity to air condition, light and power the equipment in [its] schools, learning facilities and governmental offices in which [educational] activities are conducted and administered." (*Seminole II*, Compl. at ¶ 31.) Adding these details does not alter the fact that the claims in both complaints "arise[] out of the same nucleus of operative fact, or [are] based upon the same factual predicate": Florida imposes a tax on utilities provided to the Tribe. The tribe does not allege any change in the underlying facts; it has simply narrowed the scope by focusing on more individualized activities in relation to certain listed federal statutes.

That the Eleventh Circuit found fault with the Tribe's attempt, in *Seminole I*, to "demonstrate congressional intent to preempt a specific state tax by bundling up an assortment of unrelated federal and tribal interests tied together by the common thread of electricity use," *Seminole*, 799 F.3d at 1353, does not change the Court's analysis. Adding these particularized facts to its second complaint, the inclusion of which may or may not have salvaged its more generally-framed first complaint, does not change the reality that the Tribe's second complaint still arises out of the same nucleus of operative facts as the first. *See Whole Woman's Health*, 136 S. Ct. at 2335, *as revised* (June 27, 2016) (Alito, J., dissenting) (pointing out the "hornbook rule" that "a plaintiff who loses in a first case cannot later bring the same case simply because it has now gathered better evidence") (citing *Torres v. Shalala*, 48 F.3d 887, 894 (5th Cir. 1995) ("If simply submitting new evidence rendered a prior decision factually distinct, *res judicata* would cease to exist . . . .")). Where, as here, a plaintiff makes a strategic decision to bring a generalized claim first, and loses, claim preclusion prevents that plaintiff from then seeking another

bite at the apple by simply identifying specific claims that fall clearly within the allegations in the first case. *See Hodges v. Publix Super Markets, Inc.*, 372 F. App'x 74, 76 (11th Cir. 2010) ("A party may not split his causes of action into parts to bring claims based on different legal theories at different times.") (citing *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1187 (11th Cir. 2003)).

### B. The primary right and wrong asserted are the same in each action.

Furthermore, aside from the factual analysis of the two cases, another method—if not the principal method—"for comparing causes of action is whether the primary right and duty or wrong are the same in each action." *Kemp v. Birmingham News Co.*, 608 F.2d 1049, 1052 (5th Cir. 1979) (citing *Stevenson v. International Paper Co.*, 516 F.2d 103, 109 (5th Cir. 1975). "The test is one of substance, not form." *Manning v. City of Auburn,* 953 F.2d 1355, 1358 (11th Cir. 1992). That is, "[a] final judgment on the merits of a cause of action . . . binds the parties to the suit . . . 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *Kaiser Aerospace & Elecs. Corp. v. Teledyne Indus., Inc.*, 229 B.R. 860, 870 (S.D. Fla. 1999) (Gold, J.), *aff'd in part, rev'd in part (on other ground) sub nom. In re Piper Aircraft Corp.*, 244 F.3d 1289 (11th Cir. 2001) (quoting *Cromwell v. County of Sac,* 94 U.S. 351, 352 (1876)).

Applying these principles to these two cases, the Court finds again that claim preclusion indeed bars the Tribe's second complaint. The primary right at issue in *Seminole I* was the Tribe's right to be free from the imposition of Florida's utilities tax on electricity provided to the Tribe in connection with all the activities conducted on Tribal land. (*See, e.g., Seminole I*, Compl. at ¶¶ 42, 44, 45 ("The Tribe consumes electricity in connection with every activity it conducts on Tribal Land" and "[t]he Utilities Tax . . . burdens each of these activities.").) The primary right at issue in *Seminole II* is the Tribe's right to be free from the imposition of Florida's utilities tax on electricity provided to the Tribe in connection with a particularized subset of all the activities conducted on Tribal land. (*See, e.g., Seminole II*, Compl. at ¶¶ 28, 38, 48, 58, 68, 78, 88, 98, 107, 116, 125, 134, 142, 151.) Likewise, in each case the Tribe alleges Florida impermissibly imposes the utility tax on the Tribe. All of the specific activities presented in *Seminole II* could have been offered to support the Tribe's overly-generalized claims, as the Eleventh Circuit found them to have been presented, in *Seminole I. Seminole,* 799 F.3d at 1353.

Further, the Tribe does not allege that anything has changed regarding the manner in which the tax is imposed or the way in which the Tribe is burdened by the tax since the filing of *Seminole I.* Nor does the Tribe mention

any changes in the federal framework that might now alter the preemption analysis. In substance then, if not in form, the claims alleged by the Tribe in this case are encompassed by the generally pleaded claims set forth in the first case. This second case thus falls squarely within the doctrine of claim preclusion.

### C. The Tribe could have raised the claims presented in second case in its first case.

"The doctrine of . . . claim preclusion[] bars the filing of claims which were raised or *could have been raised* in an earlier proceeding." *Citibank*, 904 F.2d at 1501 (emphasis added); *Ardis v. Anderson*, 662 F. App'x 729, 731 (11th Cir. 2016) (explaining that claim preclusion "applies not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same 'operative nucleus of fact'") (quoting *Manning*, 953 F.2d at 1358–59). To the extent that any aspects of the particularized claims alleged in this second case were not encompassed by the more generally pleaded first complaint, each certainly "could have been raised" in the "earlier proceeding." Conversely, had the Tribe's first complaint been narrowly, or more particularly, circumscribed to include only the specific activities now identified, in concert with their associated federal statutes, likely preclusion would not apply to later suits regarding different activities, associated with their own set of federal statutes. In such a case, the nucleus of operative facts encompassed in the two cases could potentially occupy disjoint sets, not necessarily encompassing the same claims. But based on the record before it, the Court concludes that all of the more specifically identified activities presented in *Seminole II*—which are really just a subset of the broad-spectrum claims that were presented in *Seminole I*—could have been raised in the earlier proceeding. The Tribe does not allege, in this second case, that any of the fourteen specific activities it claims are burdened by the utility tax were not in existence at the time the first case was filed. Nor does it allege, again, that the federal framework has since been transformed such that the calculus for determining preemption for these taxes has since been altered. In short, the Tribe does not set forth any basis upon which the Court could conclude that the Tribe was unable to raise any of the issues presented in these fourteen counts in its first case. *See Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1357 (11th Cir. 1998) ("claims that 'could have been brought' are claims in existence at the time the original complaint is filed") (quoting *Manning*, 953 F.2d at 1359).

## 4. Applying claim preclusion to this case does not result in manifest injustice.

Lastly, the Tribe argues that even if its claims are technically barred, applying claim preclusion in this case would result in manifest injustice. In support, the Tribe relies on *Garner v. Giarrusso*, 571 F.2d 1330, 1336 (5th Cir. 1978).[3] That case, however, involved the Fifth Circuit's analysis of the preclusive effect of a decision made by a New Orleans Civil Service Commission on a later suit, filed in federal court in Louisiana. It appears, then, that the court there applied Louisiana state-law claim-preclusion principles. The *Garner* case is therefore not applicable to this case, where federal claim-preclusion rules apply. To the contrary, the Eleventh Circuit has noted the United States Supreme Court's cautionary language that "[t]he doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply 'no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of res judicata.'" *Griswold v. Cty. of Hillsborough*, 598 F.3d 1289, 1294 (11th Cir. 2010) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 400 (1981)).

On the other hand, even if this exception were indeed found to be in play, the Court finds nothing unjust about the application of claim preclusion in this case. The Tribe is represented by able counsel who made the tactical decision to initiate the Tribe's claims as presented in *Seminole I*. When the appellate court remanded the case to this Court, the Tribe asked for the opportunity to present new arguments in an attempt to rectify the deficiencies in its complaint, as identified in the Eleventh Circuit's opinion. The Court denied the tribe's request: "It was the Seminole Tribe's decision to present its . . . arguments in a specific manner. It cannot escape the consequences of that choice." (*Seminole I*, Order Following Remand, ECF No. 110, 8.) As pointed out by Biegalski, the Tribe could have appealed that decision but chose not to. (Def.'s Reply, ECF No. 21, 2.) Contrary to the Tribe's protestations, the application of claim preclusion in this case does not in any way "constitute an egregious violation of the Tribe's right to due process." (Pl.'s Resp. at 19.)

## 5. Conclusion

Because the Court finds the specific allegations presented in this case barred by claim preclusion, it **grants** Biegalski's motion to dismiss (**ECF No. 12**). The Tribe's complaint is therefore **dismissed with prejudice**.

---

[3] The Eleventh Circuit has adopted, as binding precedent, all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

The Clerk is directed to **close** this case. Any pending motions are denied as moot.

**Done and ordered**, at Miami, Florida, on October 12, 2017.

_____
Robert N. Scola, Jr.
United States District Judge